1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| JI YOUNG PARK, and JOUNG SOOK PARK, husband and wife, and the marital community comprised thereof,<br><br>Plaintiffs,<br><br>v.<br><br>KICHIN CHOE and HAEWON T. CHOE, a.k.a. HAE CHOE, husband and wife, and the marital community comprised thereof, and GARDEN COURT AFH, INC., d/b/a GARDEN COURT ADULT FAMILY HOME, a Washington corporation,<br><br>Defendants. | CASE NO. C06-5456RJB<br><br><br><br>**ORDER** |

19

20

21

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. 13) and Defendants' Motion for Summary Judgment (Dkt. 15). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

22

### I.   FACTUAL AND PROCEDURAL BACKGROUND

23

#### A.   FACTS

24

25

26

27

28

On August 31, 2003, the State of Washington granted Garden Court AFH, Inc. an Adult Family Home License. Dkt. 14-2. Adult family homes are defined in the state of Washington as "a residential home in which a person or persons provide personal care, special care, room, and board to more than one but not more than six adults who are not related by blood or marriage to

ORDER
Page 1

1   the person or persons providing the services."  RCW 70.128.010.  The Washington Legislature

2   created adult family homes to as an "alternative to institutional care," and to "promote a high

3   degree of independent living for residents."  RCW 70.128.005.  Washington distinguishes the

4   adult family homes from nursing homes, boarding homes, residential treatment centers for the

5   mentally ill, and hospitals.  RCW 70.128.030.  The license here permitted care and supervision of

6   no more than six adults, at the premises located at 422 122nd Street, Tacoma, Washington.  Dkt.

7   14-2.  Parties do not dispute that the premises is a home located in a residential area.  Defendant

8   Haewon Choe, the owner of the Garden Court AFH, Inc., leased the home from Tom and

9   Charlotte Vasilatos, with an option to buy it.  Dkt. 21, at 7.  The home was referred to as Garden

10  Court Adult Family Home ("Garden Court").  Dkt. 14-2, at 8.

11          On January 1, 2005, Ji Young Park and Joung Sook Park began working as care givers at

12  Garden Court.  Dkt. 14-3, at 15.  According to Mr. Park, he performed the following duties for

13  the residents of Garden Court:  "washing them, bathe them, and feed them and take them to the

14  doctor and give them medication."  Dkt. 14-3, at 4.  Mrs. Park would cook for the residents, do

15  the laundry and provide recreational opportunities for them.  Dkt. 14-3, at 15.  Mr. and Mrs. Park

16  were required to sleep at Garden Court.  Dkt. 14-3, at 4, at 15.  They also ate a majority of their

17  meals there.  *Id*.  They were provided a private bedroom.  Dkt. 14-3, at 4.  They were to be paid

18  $3,500 for the month, and in return, were expected to be available to the residents 24 hours a day.

19  Dkt. 14-3, at 4 and 16.  They were not paid overtime compensation.  *Id*.  Mr. Park states that

20  they slept around four to five hours a night and did not have rest time or break time.  Dkt. 17,

21  16.  Mr. and Mrs. Park did not work from 10:00 a.m. to 5:00 p.m. on Sundays and paid someone

22  to be at Garden Court for them.  Dkt. 17, at 17.  Defendants state that Mr. and Mrs. Park worked

23  around 24 days, and then failed to show up for work.  Dkt. 21, at 11.  They were given notice of

24  their termination on January 31, 2005.  *Id*.  They were paid $3,500.  Dkt. 14-3, at 5.

25          Defendant Haewon Choe filed a declaration with the Court stating that she researched the

26  average cost of food provided in the home in early 2006.  Dkt. 16.  She stated that the average

27  cost of food was around $120.00 per person per month, and so states that the value of the food

28

ORDER
Page 2

provided Mr. and Mrs. Park was around $240.00 for January of 2005.  Dkt. 16, at 2.  Plaintiffs
state the value of the food was more like $150.00 to $200.00 because they would sometimes buy
their own food.  Dkt. 17, at 17.  Ms. Choe states that she researched one bedroom apartments in
the neighborhood and determined that the fair market value of the living space provided, as of
January 2005, was approximately $750.00 per month.  Dkt. 16, at 2.  Mr. Park testified that he
felt that the living space that they were provided would be worth only $300.00 -$350.00 per
month.  Dkt. 17, at 17.

### B.   PROCEDURAL HISTORY

This matter was originally filed in Pierce County Superior Court in July of 2005.  Dkt. 1,
at 2.  Plaintiffs make the following claims in the Second Amended Complaint: 1) wrongful
termination, 2) violation of Washington's Minimum Wage Act ("WMWA") and the Fair Labor
Standards Act ("FLSA"), 3) breach of contract, 4) fraud and misrepresentation, and 5) violation
of the Consumer Protection Act.  Dkt. 1- 6, at 16-24 .  Due to the addition of the Fair Labor
Standards Act claim, the case was removed to this Court pursuant to 28 U.S.C. § 1331 on August
10, 2006.  Dkt. 1, at 2.

### C.   PENDING MOTIONS

Plaintiffs now move for a partial summary judgment seeking a finding that Defendant
Garden Court is "subject to" the FLSA.  Dkt. 13.  Plaintiffs argue that:  1) the FLSA applies to
Garden Court because it was an enterprise engaged in commerce, 2) the FLSA applies because
the Garden Court was a covered enterprise engaged in an employer and employee relationship.
Dkt. 13.  Defendants respond by arguing that Garden Court does not dispute that it is an
employer or that it is an "enterprise engage in commerce," but argues that Plaintiffs' care giving
positions are exempt from the FLSA's overtime and minimum wage requirements.  Dkt. 19.

Defendants move for summary dismissal of Plaintiffs' FLSA claims and WMWA claims
arguing that: 1) Plaintiffs are exempt from the overtime requirements of the FLSA under the live
in domestic service employee exception pursuant to 29 U.S.C. § 213(b)(21), 2) Plaintiffs are
exempt from both the FLSA's minimum wage and overtime requirements under the

1  companionship exemption pursuant to 29 U.S.C. § 213(a)(15), 3) Plaintiffs are exempt under the

2  WMWA, and 4) the Court should dismiss Plaintiffs remaining state law claims because it no

3  longer has jurisdiction over a federal claim.  Dkt. 15.  Plaintiff responds by arguing that because

4  the residence in question was not a private home, the exemptions found in 29 U.S.C. § 213

5  (a)(15) and (b)(21)  in do not apply.  Dkt. 20.  Defendants reply that:  1) the (b)(21) live in

6  domestic services employee exception does not require the residence be a "private home," 2)

7  Plaintiffs received minimum wage for every hour conceivably worked, 3) independently, Plaintiffs

8  are exempt under the (a)(15) companionship exemption, 4) Plaintiffs' WMWA claim should be

9  dismissed, and 5) the Court should dismiss Plaintiff's remaining state law claims.  Dkt. 22.

10  ## II.   **DISCUSSION**

11      Parties do not dispute that Garden Court is an employer or an "enterprise engaged in

12  commerce."  Parties do dispute whether Plaintiffs' positions are exempted from coverage under

13  the FLSA.  This opinion will first examine whether the § 213 (b)(21) live in domestic services

14  employee exemption applies, then whether the § 213 (a)(15) companionship exemption applies,

15  and then turn to Plaintiffs' claims under WMWA.

16  ### A.   **SUMMARY JUDGMENT STANDARD**

17      Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,

18  and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

19  to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

20  P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party

21  fails to make a sufficient showing on an essential element of a claim in the case on which the

22  nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

23  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

24  rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith*

25  *Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant

26  probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e).

27  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting

28

ORDER
Page 4

1   the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

2   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

3   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

4          The determination of the existence of a material fact is often a close question.  The court

5   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

6   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec.*

7   *Serv., Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of

8   the nonmoving party only when the facts specifically attested by that party contradict facts

9   specifically attested by the moving party.  The nonmoving party may not merely state that it will

10  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

11  to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

12  Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be

13  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

14  **B.     29 U.S.C. § 213(b)(21) LIVE IN DOMESTIC SERVICE EMPLOYEE
        EXEMPTION FROM FLSA'S OVERTIME PROVISIONS**

15

16         The overtime provisions of the FLSA do not apply to "any employee who is employed in

17  domestic service in a household and who resides in such household."  The U.S. Department of

    Labor has further explained this exemption by regulation:

18

19         Domestic service employees who reside in the household where they are employed
           are entitled to the same minimum wage as domestic service employees who work
20         by the day. However, section 13(b)(21) provides an exemption from the Act's
           overtime requirements for domestic service employees who reside in the household
21         where employed. But this exemption does not excuse the employer from paying
           the live-in worker at the applicable minimum wage rate for all hours worked. In
22         determining the number of hours worked by a live-in worker, the employee and the
           employer may exclude, by agreement between themselves, the amount of sleeping
23         time, meal time and other periods of complete freedom from all duties when the
           employee may either leave the premises or stay on the premises for purely personal
24         pursuits. For periods of free time (other than those relating to meals and sleeping)
           to be excluded from hours worked, the periods must be of sufficient duration to
25         enable the employee to make effective use of the time. If the sleeping time, meal
           periods or other periods of free time are interrupted by a call to duty, the
26         interruption must be counted as hours worked.

27  29 C.F.R. § 552.102(a).  *See also* 29 C.F.R. § 100(a)(2) (live in domestic service employees are

28  exempted from the FLSA's overtime requirements).

Live-in domestic service employees who are employed by an employer or agency other than the family or household using their services are exempt from the Act's overtime requirements by virtue of section 13(b)(21).  This exemption, however, will not apply where the employee works only temporarily for any one family or household, since that employee would not be 'residing' on the premises of such family or household.

29 C.F.R. § 552.109(c).

Parties do not dispute that Mr. and Mrs. Park were "domestic service employees" for purposes of the exception.  Parties do dispute what the definition of the term "household" is, as referenced in the live in domestic services employee exception and in the regulations interpreting the exception.

The statue and regulations do not define the term "household."  The ordinary meaning of the term "household" is defined in Webster's Third New Int'l Dictionary, 1096 (1981), as "a social unit comprised of those living together in the same dwelling place."  The evidence in the record indicates that Garden Court was a "household" for purposes of the live in domestic service employee exception (§ 213(b)(21)).  The home was comprised of at least four elderly residents, in need of care, and their care givers. Dkt. 17, at 7.  The residents and their care givers slept, ate, and participated in activities such as personal grooming in the home.  *Id.*

Moreover, Washington's limitation on what qualifies as an adult family home also leads to the conclusion that Garden Court was a "household."  Washington adult family homes are relatively small (only six residents are permitted), as compared with, say, a boarding house, which Washington defines as homes with seven or more residents.  RCW 18.20.020(1).  Washington also excludes from the definition of "adult family home" the following:  nursing homes, residential treatment centers for the mentally ill, and hospitals.  RCW 70.128.030.  Washington considers adult family homes to be a residential use of property for zoning and public and private utility rate purposes.  RCW 70.128.175(2).  The fact that the Parks were paid by a third party is immaterial to application of the exception.  29 C.F.R. § 552.109(c).  Garden Court was a "household" as used in the domestic service employee exception.

Mr. and Mrs. Park argue that because the home was not a "private home," the live in domestic service employee exception (§ 213(b)(21)) does not apply, citing 29 C.F.R. § 552.3.

ORDER
Page 6

1  Dkt. 20, at 2.  Their argument is unavailing.  The regulation found at 29 C.F.R. § 552.3, provided

2  in full in Section II. C., specifically refers only to the exception found in § 213(a)(15) (for

3  companions) and does not reference the live in domestic service employee exception (§

4  213(b)(21)).  The live in domestic service employee exemption uses the term "household."

5  Moreover, as explained fully below in Section II. B., Garden Court should also be considered a

6  "private home."

7          The live in domestic services employee exception to the FLSA's overtime provisions

8  applIES.  The Parks are not entitled to overtime for the work they performed while at Garden

9  Court.  The next stage in the inquiry, then, is whether Mr. and Mrs. Park were entitled to

10 minimum wage for all hours worked, or whether the companionship exemption to the FLSA'

11 minimum wage and overtime provisions applies.

12 **C.     29 U.S.C. § 213(a)(15) COMPANIONSHIP EXEMPTION FROM THE
        FLSA'S MINIMUM WAGE AND OVERTIME PROVISIONS**

13          The FLSA minimum wage and overtime provisions to not apply to "any employee . . .

14 employed in domestic service employment to provide companionship services for individuals who

15 (because of age or infirmity) are unable to care for themselves."  29 U.S.C. § 213(a)(15).

16 "Companionship services" for the aged or infirm are defined as "those services which provide

17 fellowship, care and protection for a person who because of advanced age or physical or mental

18 infirmity cannot care for his or her own needs."  29 C.F.R. § 552.6.

19
20          As used in section 13(a)(15) of the Act, the term domestic service employment
        refers to services of a household nature performed by an employee in or about a
        private home (permanent or temporary) of the person by whom he or she is
21      employed. The term includes employees such as cooks, waiters, butlers, valets,
        maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers,
22      handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family
        use. It also includes babysitters employed on other than a casual basis. This listing
23      is illustrative and not exhaustive.

24 29 C.F.R. § 552.3.  The regulations further provide that,

25          Employees who are engaged in providing companionship services, as defined in §
        552.6, and who are employed by an employer or agency other than the family or
26      household using their services, are exempt from the [FLSA's] minimum wage and
        overtime pay requirements by virtue of section 13(a)(15).  Assigning such an
27      employee to more than one household or family in the same work week would not
        defeat the exemption for that workweek, provided that the services rendered

28

ORDER
Page 7

1    during each assignment come within the definition of companionship services.

2    29 C.F.R. § 552.109.

3    　　　The apparent conflict between the language in 29 C.F.R. § 552.3 ("domestic services

4    refers to services of a household nature performed by an employee **in or about a private home**

5    **(permanent or temporary) of the person by whom he or she is employed**") and  29 C.F.R. §

6    552.109 (employees engaged in companionship services and who are "**employed by an employer**

7    **or agency other than the family or household using their services**," are exempt from the

8    [FLSA's] requirements) was resolved in the June 2007 Supreme Court case *Long Island Care at*

9    *Home LTD. v. Coke*, 127 S.Ct. 2339 (2007).   In *Coke*, a domestic worker, who provided

10   companionship services to elderly persons in their homes, brought an action against her employer

11   arguing that she was entitled to minimum wage and overtime under the FLSA.  *Id.*  Coke was

12   employed by a third party and not the individuals receiving services.  *Id.  Coke* pointed out the

13   conflict in the two regulations (§ 552.3 and § 552.109) and then argued that because she was not

14   working in the "private home" of her employer, (referring to the language in 29 C.F.R. § 552.3 )

15   the FLSA companionship exception did not apply.  *Id.*  The Court rejected that argument and

16   upheld the regulation permitting a third party to pay the care provider (29 C.F.R. § 552.109 ).  *Id.*

17   The Court held that the companionship exception to the overtime and minimum wage provisions

18   of the FLSA applied.  *Id.*

19   　　　Parties do not dispute that Mr. and Mrs. Park were engaged in companionship services as

20   defined in the regulations.  In light of *Coke*, the parties do not quibble with the fact that the Parks

21   were paid by a third party and not directly by the residents.  Mr. and Mrs. Park argue that the

22   home in question here was not the "private home" of the residents and so the companionship

23   exception did not apply, citing 29 C.F.R. § 552.3.  Dkt. 20.

24   　　　Garden Court should be considered a "private home" in considering whether to apply the

25   companionship exception to the FLSA.  Although the property was owned by a third party, and

26   leased by Defendant Haewon Choe for Garden Court, the residents lived on the property

27   permanently.  Dkt. 21, at 7.  There is no evidence in the record that the home was open to the

28

ORDER
Page 8

1    public.

2         Moreover, normally, specific regulations govern the more general regulations.  *Coke* at

3    2348.  The Supreme Court in *Coke* held that the primary if not sole purpose of § 552.3 is to

4    "describe the kind of work that must be performed by some to qualify as a 'domestic service'

5    employee," and the sole purpose of the § 552.109 "is to explain how the companionship services

6    exemption applies to persons employed by third-party entities."  *Id*. at 2348-49.  Section 552.109

7    is the specific regulation regarding companionship services provided by care givers who are

8    employed by third parties.  *Id*.  This regulation, then, applies in the case at bar.

9         Section 552.109 uses the term "household" and not "private home."  29 C.F.R. § 552.109

10   (companions who are employed by a third party "other than the family or **household** using their

11   services" are also exempt under 213(a)(15)) (*emphasis added*).  As explained above in Section II.

12   B., Garden Court should be considered a "household."  The companionship exception applies, and

13   the Parks are not entitled to minimum wage or overtime pursuant to 29 U.S.C. § 213(a)(15).

14        **D.     WASHINGTON MINIMUM WAGE ACT CLAIM**

15        "Any individual whose duties require that he or she reside or sleep at the place of his or

16   her employment," is not a covered employee under the WMWA.  RCW 49.46.010(5)(j).  Parties

17   do not dispute that Mr. and Mrs. Park were required to sleep at Garden Court.  Accordingly, they

18   are exempted from coverage under the WMWA.

19        **E.     CONCLUSION**

20        Plaintiffs' positions were exempted from the FLSA's minimum wage and over time

21   provisions.  Their positions were also exempted from the WMWA.  Plaintiffs' claims under the

22   FLSA and the WMWA should be dismissed.  Defendants move for dismissal Plaintiffs' remaining

23   state law claims.  Parties should be ordered to show cause why the remaining state law claims

24   should not be remanded to Pierce County Superior Court.  Plaintiffs' brief, if any, is due

25   September 17, 2007, Defendants response, if any, is due September 19, 2007 and Plaintiffs' reply,

26   if any, is due September 20, 2007.  Consideration of the parties' responses to the Order to Show

27   Cause should be noted for September 21, 2007.

28

1

### III.   ORDER

2          Therefore, it is hereby, **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment

3   (Dkt. 13) is **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 15) is **GRANTED**.

4   Plaintiffs' claims under the Fair Labor Standards Act and the Washington Minimum Wage Act are

5   **DISMISSED**.

6          Parties are further **ORDERED TO SHOW CAUSE, IF ANY THEY HAVE, WHY** the

7   matter should not be  remanded to Pierce County Superior Court.  Plaintiffs' brief, if any, is due

8   September 17, 2007, Defendants' response, if any, is due September 19, 2007 and Plaintiffs'

9   reply, if any, is due September 20, 2007.  Consideration of the parties' responses to the Order to

10  Show Cause should be noted for September 21, 2007.

11         The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel

12  of record and to any party appearing *pro se* at said party's last known address.

13         DATED this 10th day of September, 2007.

14

15

16         ROBERT J. BRYAN
           United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page 10